1

2

3

4

5              UNITED STATES DISTRICT COURT

6             EASTERN DISTRICT OF WASHINGTON

7   JAMES MARK HINKLEY,

8                          Plaintiff,          NO:  4:14-CV-5117-TOR

9        v.                                    ORDER GRANTING DEFENDANTS'
                                               MOTION FOR SUMMARY
10  SERGEANT KIRK JESSEE,                       JUDGMENT
    RONALD SHUMATE, RONALD
11  KNIGHT, JILL ANSORGE,
    NATHAN SHATTO, and MARK
12  ALLEN,

13                         Defendants.

14        BEFORE THE COURT are Defendants' Motion for Summary Judgment

15  (ECF No. 59) and Plaintiff's Response and Cross Motion for Summary Judgment

16  (ECF No. 64).  This matter was submitted for consideration without oral argument.

17  The Court—having reviewed the briefing, the record, and files therein—is  fully

18  informed.  For the following reasons, this Court grants Defendants' Motion for

19  Summary Judgment

20  //

ORDER GRANTING  DEFENDANTS'  MOTION FOR SUMMARY  JUDGMENT ~ 1

**BACKGROUND**

This case concerns alleged retaliation by several prison officials. Plaintiff James Hinkley, proceeding *pro se* and *in forma pauperis*, alleges that Defendants violated his First Amendment right to file prison grievances when they twice searched and trashed his cell, threatened to send him to segregation, prevented him from participating in the Native American event of smudging, and threatened to transfer him out of protective custody.[1] ECF No. 16.

Defendants now move for summary judgment on all claims of retaliation on the grounds that Plaintiff failed to (1) exhaust available administrative remedies, (2) allege the personal participation of all Defendants, and (3) otherwise demonstrate the necessary elements of retaliation. ECF No. 59. In response, Plaintiff moves for summary judgment but also requests that this Court allow his case proceed to trial. ECF No. 64.

//

//

---

[1] On March 20, 2015, this Court dismissed Plaintiff's Complaint in part, terminated Defendant Bernard Warned, and struck various extraneous exhibits. ECF No. 26. The Court then ordered Defendants to respond to Plaintiff's allegations of retaliation against the remaining Defendants. ECF No. 29.

# FACTS

The following are the undisputed material facts unless otherwise noted. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d) ("[T]he Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [in the non-moving party's opposing statement of facts]").

Here, Plaintiff's response briefing has listed six facts in support of his claims and attached over three-hundred pages of documents, which he has asked this Court to review in determining whether summary judgment is appropriate. Plaintiff has also provided a verified, albeit handwritten, Complaint. This Court will make every reasonable effort to discern the material disputed facts, if any, based on the materials presented; however, it is not required to comb through the record to find some reason to deny Defendant's motion. *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988); *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that the court "need not examine the entire file for evidence establishing a genuine issue of fact, where the

evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found").[2]

### A. Background

Plaintiff is an inmate in the custody of the Washington Department of Corrections ("DOC"). ECF No. 60 ¶ 1. At all times relevant to his complaint, Plaintiff was incarcerated in the protective custody part of the Baker-Adams-Rainier ("BAR") Units of the Walla Walla State Penitentiary. ECF Nos. 16 ¶¶ 1-3; 60 ¶ 1. Plaintiff contends he was located in the BAR Units because he risked harm from other inmates on the "mainline." ECF No. 16 ¶ 2.

### B. Laundry Grievance

In mid-March 2013, Plaintiff was unable to turn in his laundry for cleaning after he returned from the sweat lodge. ECF No. 16 ¶ 8. Apparently, the laundry pickup occurred after his departure and prior to his return from the sweat lodge.

---

[2] Plaintiff's briefing also notes that he has "a plethora of evidence yet to come for trial," ECF No. 64 at 2; however, the possibility of future evidence in support of his claims does not impact this Court's summary judgment ruling, which is based on the evidence currently before this Court.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

Plaintiff grieved this laundry issue.[3]  ECF No. 60-1 at 47.  As part of the grievance investigation, Defendant Jessee met with Plaintiff on April 2, 2013, and also spoke with the laundry workers.[4]  ECF Nos. 16 ¶ 9; 60-1 at 47.  According to the laundry workers, offenders going to sweat lodge are instructed to bring down their laundry as they leave the unit and place it in a provided bin.  ECF No. 60-1 at 47.  In his interview with Jessee, Plaintiff indicated he did not know about this procedure and that, now that he was aware, he considered his grievance resolved.  ECF Nos. 16 ¶ 13; 60-1 at 47.

The meeting between Defendant Jessee and Plaintiff was conducted in the Baker Unit Sergeant's Office with the door open and other staff standing outside the door.  ECF Nos. 16 ¶ 10; 60-2 at 17.  Plaintiff asserts that Jessee spoke in a "very hostile and threatening" manner, "cussing and referring to inmates who

---

[3] The grievance program at each DOC facility is managed in accordance with DOC Policy 550.100 and the Offender Grievance Program Manual and has four levels of review.  ECF Nos. 60 ¶ 1; 60-1 at 6-45.

[4] Although the initial grievance response indicates that Defendant Shumate investigated Plaintiff's grievance, ECF No. 60-1 at 47, a subsequent response clarifies that it was actually Defendant Jessee, *id.* at 49.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

grieve as 'babies'," and otherwise conducted the meeting in an intimidating way. ECF No. 16 ¶¶ 11, 14.

### C. April 4 Cell Search & Laundry Grievance Appeal

On April 4, 2013, Plaintiff's cell was searched by Defendant Shatto. ECF No. 16 ¶ 16. Plaintiff asserts that "the cell was trashed, all [his] books were scattered on the floor, [his] sacred item (crow feather fan) had been folded on one side, some property [was] taken, [his] clothes were dumped in a corner and random property [was] scattered throughout the cell . . . [and] his toothbrush was pulled out of its holder on an unsanitary surface and in the [bristles] was what looked like a pubic hair."[5]  *Id.* ¶ 19.

Despite Plaintiff's previous willingness to close the laundry grievance, he appealed the initial response. ECF Nos. 16 ¶ 20; 60-1 at 49. In his appeal, Plaintiff asserted that he should have been able to turn in his laundry, that Defendant Jessee was "very unprofessional" about interviewing him, and that his cell was searched in an "abusive manner" two days after his meeting with

---

[5] Defendant Shatto contends he left the cell in better condition than he found it, did not touch Plaintiff's crow feather, and did not have knowledge of Plaintiff's grievance activities.  ECF No. 60-2 at 23-24.

Defendant Jessee.  ECF No. 60-1 at 49.  This cell search was conducted around April 4, 2013.  ECF No. 16 ¶ 16.

The appeal response explained that Plaintiff would have to grieve the April 4 cell search and any claimed harassment separately.[6]  ECF No. 60-1 at 49.  It also indicated that Jessee did not understand why Plaintiff believed he was being disrespectful or why Plaintiff would object to other staff being present during the interview as it would be the staff who would ultimately deal with the laundry issue. *Id*.  The subsequent appeal response similarly found that Plaintiff's laundry complaint had been adequately addressed and directed Plaintiff to file a separate complaint if he felt he had been retaliated against.  *Id*. at 53.

Plaintiff never filed a separate grievance regarding the April 4 cell search.

**D. April 19 Cell Search**

On April 19, 2013, Plaintiff's cell was again searched and again "trashed." ECF No. 16 ¶¶ 24, 27, 28, 38 (explaining that his coffee was dumped into his toilet, his pillow was taken, his legal work was crumpled into balls and ripped, his personal books were tossed around and damaged, and his laundry and other

---

[6] Pursuant to the OGP manual, an offender is not permitted to insert a new issue into a grievance appeal; the appeal must address the same issue raised in the initial grievance.  *See* ECF No. 60-1 at 5.

property were tossed all around his cell).[7]  The search was conducted by Response and Movement officers after they observed Plaintiff acting suspiciously in the yard, ECF No. 60-2 at 28, 34; Plaintiff disputes this explanation, questioning why they did not remove him from the yard before first searching his cell, ECF No. 16 ¶¶ 34, 46-47.  Pursuant to this search, the officers found a large amount of contraband in Plaintiff's cell.  *See* ECF No. 60-2 at 30-31.

Shortly thereafter, Plaintiff filed a grievance about the April 19 cell search. ECF No. 60-1 at 56.  As part of the grievance investigation, Defendant Shumate interviewed Plaintiff and third shift staff and found that the search was done by Response and Movement staff, not BAR Unit staff, and was due to suspicious behavior that these officers witnessed in the outside yard.  *Id.*  The appeal response apologized that Plaintiff's cell was not left as neatly as the search officers could have left it but noted the need for more, not less, security searches because of secret contraband in inmates' cells.  *Id.* at 60.  The subsequent appeal response similarly found that Plaintiff's grievance had been thoroughly investigated.  *Id.* at 62.

//

---

[7] Defendants dispute whether Plaintiff's cell was indeed trashed. ECF No. 60-2 at 28, 34.

1

### E. Smudging & Segregation Threat

2    After the April 19 search, Plaintiff says he started to have a panic attack

3    looking at the state of his cell. ECF No. 16 ¶ 32. Shatto came to Plaintiff's cell at

4    this time and, in response to Plaintiff accusing Shatto of repeatedly searching his

5    cell in an effort "to break [him]," Shatto allegedly told Plaintiff to "shut the fuck

6    up or you'll find yourself in the hole." *Id*. ¶ 33.[8] Shatto ultimately ordered Plaintiff

7    to lock up in his cell. ECF No. 60-2 at 25. Plaintiff was not allowed out of his cell

8    that evening; as a result, he was unable to attend smudging, a Native American

9    event. ECF No. 16 ¶¶ 36, 37; 60-2 at 25.

10    Plaintiff filed a grievance against Shatto for not allowing him out for

11    smudging on April 19. ECF No. 60-1 at 65. As part of the grievance

12    investigation, Defendant Shumate interviewed Plaintiff and Shatto and noted that

13    Plaintiff, without being asked about his behavior/demeanor, volunteered this his

14    demeanor was not out of hand. *Id*. Shatto explained to Shumate that Plaintiff was

15    not let out for smudging because of Plaintiff's inappropriate and hostile behavior

16    towards Shatto after the cell search. *Id*. Shumate concluded that Shatto's actions

17    were taken for the safety and security of staff and other offenders and noted that

18

19    _____

[8] Shatto admits that he raised his voice but denies threatening to send Plaintiff to

20    the hole. ECF No. 60-2 at 24-25.

1  Plaintiff had since been let out for smudging. *Id.* The subsequent appeal response

2  concurred. *Id.* at 68.

3       Plaintiff also filed a grievance against Shatto for yelling at him and

4  threatening to send Plaintiff to administrative segregation after the April 19 cell

5  search. ECF No. 60-1 at 71. The grievance investigation response noted that staff

6  reported Plaintiff was irate and yelling at them to return the property confiscated

7  by the Response and Movement officers and that staff rightfully gave Plaintiff a

8  stern directive to stop his behavior or risk an infraction and possible segregation

9  placement. *Id.* The appeal response, after interviewing Plaintiff and an offender

10  witness, encouraged Plaintiff to improve his communication with officers. *Id.* at

11  80. The subsequent appeal response agreed and similarly encouraged Plaintiff and

12  staff to interact and communicate in a calm and respectful manner. *Id.* at 82.[9]

13  **F. Jessee Memos & Relocation Threat**

14       In mid-July 2013, Jessee posted a memorandum explaining that the dayroom

15  start time of 7 p.m. would be strictly enforced. ECF No. 16 ¶ 67. Plaintiff

16  interpreted the memorandum and alleged loss of dayroom time as retaliating

17

18  [9] To the extent Plaintiff adequately pleaded that the prison official retaliated

19  against him by making him skip showers, Plaintiff included this allegation in his

20  initial grievance but abandoned it on appeal. *See* ECF No. 60-1 at 73, 80.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

against inmates who used the grievance process. *Id.* ¶ 68; *see* ECF No. 60-2 at 2 (explaining that the memorandum cited to inmate grievances). Within an hour, Jessee took down the memo, having been told it was confusing. ECF No. 60-2 at 19-20.

Shortly thereafter, Plaintiff grieved this memo, complaining that this memo was targeting him. ECF Nos. 16 ¶ 70; 60-2 at 2. In response, prison officials explained that the dayroom start time was supposed to be 7 p.m. pursuant to the specific BAR unit manual but this start time had not been strictly enforced and thus the memorandum was merely clarifying the prison policy. *See* ECF No. 60-2 at 2, 3, 7.

After the memorandum had been taken down, Plaintiff was willing to withdraw his grievance. However, Jessee posted another memorandum regarding how many onsite warnings an officer could give before issuing an infraction, *id.* at 20, and Plaintiff chose to appeal his original grievance, ECF Nos. 16 ¶ 72; 60-2 at 5. Plaintiff also filed a separate grievance regarding the second memorandum. ECF No. 60-2 at 9. Plaintiff interpreted the second memorandum as also attacking inmates like him who use the grievance process. *Id.* at 5.

In early August, Defendant Jessee spoke with Plaintiff about the memoranda Jesse had posted. ECF Nos. 16 ¶¶ 74-75; 60-2 at 20-21. In this conversation, Jessee allegedly told Plaintiff that he took down the memoranda because Plaintiff

didn't like them. ECF No. 16 ¶ 74. Jessee also allegedly told Plaintiff that he

didn't care what inmates think; that if he does not get grieved he is not doing his

job right; and indicated that he does not care if Plaintiff grieves him and that he

sees the grievances first. *Id.* Jessee, however, ended the conversation with the

alleged threat that if he kept having problems with Plaintiff, he would send

Plaintiff to the mainline. *Id.* ¶ 75.[10] After this conversation, Plaintiff withdrew his

grievances regarding the memoranda, ECF No. 60-2 at 6, 10; in his Complaint,

Plaintiff asserts that he withdrew the grievances because of Jessee's threat to send

him to mainline where he would be harmed, ECF No. 16 ¶ 76.

## DISCUSSION

### A. Standard of Review

Summary judgment may be granted to a moving party who demonstrates

"that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the

initial burden of demonstrating the absence of any genuine issues of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

---

[10] Jesse maintains that he merely suggested Plaintiff work with his counselor about

other placement options if he was unhappy with the BAR Units. ECF No. 60-2 at

21.

non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir.

1996) ("[M]ere allegation and speculation do not create a factual dispute for

purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)). Further, only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

**B. Section 1983**

To establish a section 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that 'causes' the deprivation of which the plaintiff complains.'" *Id.* at 633 (brackets omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

1    Defendants do not appear to dispute that they were acting under color of

2  state law.  The Court, therefore, turns its attention to whether Defendants

3  committed an act or participated in an act that deprived Plaintiff of some federal

4  right, privilege, or immunity.

5    **C. Retaliation**

6    "Prisoners have a First Amendment right to file grievances against prison

7  officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d

8  1108, 1114 (9th Cir. 2012).  A retaliation claim has the following five basic

9  elements:

10    First, a plaintiff must demonstrate that he was engaging in protected

11  conduct. *Id.* "The filing of an inmate grievance is protected conduct." *Id.* (citing

12  *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005)).

13    Second, the plaintiff must demonstrate that the defendant took adverse

14  action against him.  *Id.*  "The mere *threat* of harm can be an adverse action." *Id.*

15  (alterations omitted) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.

16  2009)).

17    Third, the plaintiff must show "a casual connection between the adverse

18  action and the protected conduct." *Watison*, 668 F.3d at 1114.  To satisfy this

19  element, "a plaintiff must show that his protected conduct was the substantial or

20  motivating factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

1    (internal quotation marks omitted).  While timing can support an inference of

2    retaliatory intent, it is not sufficient by itself to support a finding of retaliatory

3    motive.  *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

4           Fourth, the plaintiff must demonstrate that the "official's acts would chill or

5    silence a person of ordinary firmness from future First Amendment activities."

6    *Watison*, 668 F.3d at 1114 (quoting *Robinson*, 408 F.3d at 568).  "A plaintiff who

7    fails to allege a chilling effect may still state a claim if he alleges he suffered some

8    other harm that is more than minimal."  *Id.* (internal citation, brackets, and

9    quotation marks omitted).  In other words, a plaintiff need not show that his

10   activities were actually chilled.  *Brodheim*, 584 F.3d at 1271; *Robinson*, 408 F.3d

11   at 568 n.11.

12          Finally, the plaintiff must demonstrate that the adverse action did not

13   advance legitimate goals of the correctional institution.  *Watison*, 668 F.3d at 1114.

14   If Defendants establish the existence of a legitimate penological goal for the

15   alleged adverse action, Plaintiff then bears the burden of "proving the absence of

16   legitimate correctional goals for the conduct of which he complains."  *Pratt*, 65

17   F.3d at 806.  "[W]e should 'afford appropriate deference and flexibility' to prison

18   officials in the evaluation of proffered legitimate penological reasons for conduct

19   alleged to be retaliatory."  *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482

20   (1995)).  However, "prison officials may not defeat a retaliation claim on summary

judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Here, Plaintiff asserts, pursuant to 42 U.S.C. § 1983, that Defendants have violated his civil rights by unlawfully retaliating against him. Specifically, this Court construes Plaintiff's Complaint as contending the following adverse actions serve as the basis for his retaliation claims: (1) Defendant Shatto searched his cell on April 4 in an "abusive manner," and Defendants Ansorge and Allen subsequently searched his cell on April 19 and again "trashed" it; (2) Defendant Shatto prevented Plaintiff from smudging and threatened to send him to segregation; and (3) Defendant threatened to relocate Plaintiff to mainline if he kept having issues with Plaintiff. With all of the above alleged adverse actions, Plaintiff contends they were taken against him because he exercised his First Amendment right to file prison grievances, chilled this protected conduct, and were not undertaken to advance legitimate penological purposes.

This Court will address each alleged adverse action in turn.

### 1. Abusive Cell Searches

Plaintiff contends that his cell was twice searched in an abusive manner in retaliation for his laundry grievance. First, BAR Unit staff searched and allegedly

1    trashed Plaintiff's cell on April 4. ECF No. 16 ¶ 18. Second, Response and

2    Movement staff searched and also allegedly trashed Plaintiff's cell on April 19.

3    ECF Nos. 16 ¶¶ 24-28; 64 at 8, 12, 19. Plaintiff highlights the timing of both

4    searches, which occurred "on the heels" of his laundry grievance and notes that,

5    prior to his laundry grievance, the condition of his cell after a search was normal.

6    ECF No. 64 at 13.

7                    **a. Failure to Exhaust April 4 Cell Search Claim**

8            As a threshold issue, Plaintiff's April 4 cell search claim fails for failure to

9    exhaust.

10          Pursuant to the Prisoner Litigation Reform Act, "[n]o action shall be brought

11   with respect to prison conditions under section 1983 of this title, or any other

12   Federal law, by a prisoner confined in any jail, prison, or other correctional facility

13   until such administrative remedies as are available are exhausted." 42 U.S.C. §

14   1997e(a). "Section 1997e(a) requires an inmate not only to pursue every available

15   step of the prison grievance process but also to adhere to the 'critical procedural

16   rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting

17   *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). This exhaustion requirement affords

18   corrections officials a fair opportunity to address complaints internally and correct

19   their own errors before allowing the initiation of a federal case. *Id.*

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

1    Here, Plaintiff failed to exhaust his retaliation claim related to the April 4,

2  2013, cell search. Pursuant to the Offender Grievance Program, which governs the

3  DOC grievance procedure, new information cannot be included in the appeal of a

4  grievance, as Plaintiff was informed: "Appeals must address the same issue as the

5  initial grievance. New or additional information regarding the original issue may

6  be given, but new issues may not be added." ECF No. 60-1 at 34. While Plaintiff

7  complained of the April 4 cell search in the appeal of his laundry issue grievance,

8  he never filed a separate grievance related to this issue. And this deficiency was

9  highlighted by several DOC officials, whom all expressly encouraged Plaintiff to

10  file a separate grievance if he felt he had suffered retaliation. *See id.* at 49, 53.

11  Plaintiff has failed to provide any explanation for why this failure to exhaust

12  should be excused. *See McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015)

13  (listing reasons why a prisoner's failure to exhaust might be excused).

14  Accordingly, Defendants are entitled to summary judgment on this claim.

### b. No Causal Connection

16    Regarding the April 19 cell search, Plaintiff has failed to demonstrate the

17  existence of a genuine dispute of material fact as to whether the search was

18  motivated by Plaintiff's protected activity. While Plaintiff's cell was twice

19  searched in a two-week period following his laundry issue grievance, there is little

20  else to support an inference of retaliatory intent. *See Pratt*, 65 F.3d 808 (holding

1  that while timing can provide circumstantial evidence of retaliatory intent, it is

2  insufficient by itself to support the inference of intent, especially where there is no

3  evidence showing that the defendants had knowledge that plaintiff engaged in

4  protected conduct).  Importantly, the officers who actually conducted the April 19

5  search, Defendants Allen and Ansorge, were not part of the BAR Unit staff which

6  Plaintiff had grieved.  Moreover, Plaintiff has failed to present evidence that these

7  Defendants were even aware of Plaintiff's grievance.  Finally, even if the Response

8  and Movement officers "trashed" Plaintiff's cell as alleged, one of the searching

9  officers notes that returning an offender's cell to its original condition is not always

10  possible, "particularly when many contraband items are discovered."  ECF No. 60-

11  2 at 28.  Here, the officers confiscated a large amount of contraband from

12  Plaintiff's cell.  *See id*. 30-31 (listing confiscated contraband).  Accordingly,

13  Plaintiff has failed to sufficiently support his allegation of retaliatory intent in

14  order to survive summary judgment.

### c.  Legitimate Penological Goal

16      Moreover, Plaintiff has failed to demonstrate the existence of a genuine

17  dispute of material fact as to whether the April 19 cell search served no legitimate

18  penological goal.  Defendants assert that Plaintiff's cell was searched on April 19

19  because of a suspicion of contraband after viewing Plaintiff in the outside yard.

20  Indeed, the search report indicates that a number of contraband items were

discovered in Plaintiff's cell and confiscated, which helps explain why the searching officers were unable to return Plaintiff's cell to its original state. ECF No. 60-2 at 28 (Ansorge Declaration explaining that it is not always possible to restore the offender's cell to its original condition, especially when many contraband items are discovered); *see id.* at 30-31 (Search Report). Such searches, conducted upon a suspicion of contraband, undoubtedly serve legitimate penological goals in assuring that inmates are not secretly hiding contraband in their cells, which conduct undermines the discipline of the institution and possibly endangers the overall security of the facility and its occupants. Accordingly, Plaintiff has failed to rebut the legitimate penological purpose of the search of his cell in order to survive summary judgment

Even drawing all reasonable inferences in Plaintiff's favor, Defendants are entitled to summary judgment on this claim as no reasonable jury could find Plaintiff has demonstrated all necessary elements of retaliation.

### 2. Smudging & Segregation Threat

Plaintiff next asserts that Defendant Shatto, directly following the April 19 cell search, retaliated against Plaintiff by not allowing him out of his cell to attend smudging and told Plaintiff "to shut the fuck up or you'll find yourself in the hole." ECF No. 16 ¶¶ 33, 36-37.

//

### a. No Causal Connection

First, Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to whether Shatto's actions were motivated by Plaintiff's protective activity. Besides the timing of Shatto's conduct—which occurred immediately after the April 19 cell search, a few weeks after the April 4 search, and the initiation and appeal of Plaintiff's laundry grievance—Plaintiff has failed to put forth any evidence to support the inference that Shatto's conduct was due to Plaintiff exercising his First Amendment rights to file prison grievances. Instead, the record, including Plaintiff's Complaint, demonstrates that Shatto was responding to Plaintiff's behavior. Plaintiff's Complaint indicates that he was yelling "loudly" to get other inmates to look at the state of his cell and that he was starting to have a panic attack right before his interaction with Shatto. *Id.* ¶¶ 31-32. The grievance investigation notes remarked on Plaintiff's behavior after his cell was searched on April 19 and highlighted Plaintiff's unprompted defense of his behavior towards Shatto. ECF No. 60-1 at 65 ("You said you had nothing to add to your grievance. However, you volunteered that you[r] demeanor wasn't out of hand, even though I hadn't asked you about your behavior/demeanor."). Moreover, Plaintiff never pursued his grievance against Shatto's April 4 cell search; thus, it is unclear what protected conduct Plaintiff is alleging Shatto was

1    retaliating against. Accordingly, Plaintiff has failed to sufficiently support his

2    allegation of retaliatory intent in order to survive summary judgment.

3                    **b.  Legitimate Penological Goal**

4            Second, Plaintiff has failed to demonstrate the existence of a genuine dispute

5    of material fact as to whether Defendant Shatto's actions had no legitimate

6    penological goal.  While Plaintiff makes a single conclusory allegation in his

7    Complaint that Shatto did not let him out for smudging and threatened segregation

8    because he was mad at Plaintiff for exercising his First Amendment rights, the

9    record shows that Plaintiff's behavior was such that he may have posed a threat to

10   the security of the correctional guards and other offenders.  Even Plaintiff's

11   Complaint admits that he was yelling loudly to get the attention of other inmates

12   and was starting to have a panic attack when the interaction with Shatto occurred.

13   As such, Shatto had a legitimate reason for keeping Plaintiff within his cell and

14   warning him that segregation may be the consequence of his behavior.

15   Accordingly, Plaintiff has failed to rebut the legitimate penological purpose of the

16   search of his cell in order to survive summary judgment

17           Even drawing all reasonable inferences in Plaintiff's favor, Defendants are

18   entitled to summary judgment on this claim as no reasonable jury could find

19   Plaintiff has demonstrated all necessary elements of a retaliation claim.

20   //

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

### 3. Relocation Threat

Finally, Plaintiff asserts that Defendant Jessee retaliated against him in mid-July 2013 by threatening to relocate Plaintiff to "mainline." ECF Nos. 16 ¶ 75; 64 at 2, 6-7. Specifically, Defendant Jessee allegedly told Plaintiff, following Plaintiff's grievances regarding memoranda posted by Jessee, that "if [he] ke[pt] having problems with [Plaintiff] [he'll] send [Plaintiff] to mainline." ECF No. 16 ¶ 75. In this same encounter, however, Jessee also told Plaintiff that he did not care if inmates grieved him. *Id.* ¶ 74. Following this conversation, Plaintiff withdrew his previously filed memoranda grievances and never filed a grievance regarding Jessee's alleged relocation threat, explaining that he feared reprisal from Jessee. *Id.* ¶ 76.

### a. Failure to Exhaust

As a threshold issue, Plaintiff has failed to exhaust this claim. As detailed above, prisoner plaintiffs are required to exhaust available administrative remedies before filing suit in federal court. *See Ngo*, 548 U.S. at 90. However, this requirement is excused "when prison officials have rendered the grievance process effectively unavailable." *McBride*, 807 F.3d at 987.

A prisoner may be able to show that an administrative remedy is "effectively unavailable" due to the threat of retaliation, which claim has a subjective and objective component. First, "a prisoner must provide a basis for the court to find

1    that he actually believed prison officials would retaliate against him if he filed a

2    grievance." *Id.* Second, the prisoner "must then demonstrate that his belief was

3    objectively reasonable." *Id.* Explicit reference to the grievance system is not

4    necessary. *Id.* at 988. However, the court must be able to find "some basis in the

5    record . . . to conclude that a reasonable prisoner of ordinary firmness would have

6    believed that the prison official's action communicated a threat not to use the

7    prison's grievance procedure and that the threatened retaliation was of sufficient

8    severity to deter a reasonable prisoner from filing a grievance." *Id.*

9         While this Court finds Plaintiff very well may have subjectively believed

10   that Jessee's statement constituted a threat not to use the grievance system, this

11   Court finds that a reasonable prisoner of ordinary firmness would not have

12   believed as much. While Jessee allegedly told Plaintiff, "If I keep having problems

13   with you I'll send you to mainline," he also told Plaintiff in this same conversation,

14   "I don't give a fuck what the other inmates think," "If I don't get grieved I'm not

15   doing my job right," and "Grieve me I don't care." ECF No. 16 ¶ 74. Thus, even

16   if Jessee did threaten to relocate Plaintiff, a reasonable prisoner would not have

17   believed this statement constituted a threat not to file a grievance when,

18   immediately prior to this statement, Jessee invited Plaintiff to grieve him.

19   Accordingly, because Plaintiff has failed to create a triable issue as to whether any

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25

1    threat rendered the prison grievance process effectively unavailable, Defendants

2    are entitled to summary judgment on this final claim.[11]

3    **D. Revocation of *In Forma Pauperis* Status**

4        Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma*

5    *pauperis* if the trial court certifies in writing that it is not taken in good faith." The

6

_____

7    [11] To the extent Plaintiff is also asserting that the memoranda posted by Jessee

8    constitute a basis for a retaliation claim, Plaintiff withdrew his grievances and thus

9    failed to exhaust his claims. Moreover, Plaintiff has failed to show any adverse

10   action. The memoranda merely explained the prison's policies regarding dayroom

11   start time and the number of onsite warnings an offender would receive before

12   risking an infraction; these memoranda did not deprive Plaintiff of certain

13   privileges previously enjoyed nor could a reasonable jury find as much. Finally,

14   Plaintiff has failed to demonstrate any causal connection between the posting of

15   the memoranda in mid-July and Plaintiff's initial March and April grievances, the

16   only protected conduct Plaintiff engaged in prior to this date. Importantly, Plaintiff

17   does not allege that he filed a grievance regarding the dayroom start time or the

18   number of onsite warnings an inmate was due before suffering an infraction; thus,

19   Plaintiff has failed to demonstrate a connection between Jessee's memoranda and

20   any protected conduct of Plaintiff.

good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v. United States,* 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

This Court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact. Accordingly, the Court revokes Plaintiff's *in forma pauperis* status.

**ACCORDINGLY, IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 59) is **GRANTED.**

2. Plaintiff's Response and Cross-Motion for Summary Judgment (ECF No. 64) is **DENIED.**

3. Plaintiff's *in forma pauperis* status (ECF No. 15) is **REVOKED**.

4. The District Court Executive is directed to enter this Order, provide copies to the parties, enter **JUDGMENT** for Defendants on all claims, and **CLOSE** the file.

**DATED** April 29, 2016.

THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 27